IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| ANNETTE K., individually and on behalf of her minor child, C.K.,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF HAWAII, DEPARTMENT OF EDUCATION, and KATHRYN MATAYOSHI, in her official capacity as Superintendent of the Hawaii Public Schools,<br><br>Defendants. | CIVIL NO. 12-00154 HG-BMK |

**ORDER REVERSING AND REMANDING
DECISION OF ADMINISTRATIVE HEARINGS OFFICER**

Plaintiff Annette K, individually and on behalf of her child C.K., appeals the Decision of an Administrative Hearings Officer in a case arising under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq.

Plaintiff requested an Administrative Hearing to challenge the May 18, 2011 Individualized Education Program provided to C.K. by the Hawaii Department of Education. On February 17, 2012, the Administrative Hearings Officer issued a Decision, finding that the May 18, 2011 Individualized Education Program provided C.K. with a Free Appropriate Public Education.

1

Plaintiff seeks the reversal of the Administrative Hearings Officer's Decision and appropriate remedies, based on her position that the Department of Education  violated the Individuals with Disabilities Education Act by failing to provide C.K. with Extended School Year services in the May 18, 2011 Individualized Education Plan.

For the reasons set forth below, the Court **REVERSES** the Hearings Officer's February 17, 2012 Decision and **REMANDS** the case for the Hearings Officer to determine appropriate remedies.

<u>**PROCEDURAL HISTORY**</u>

On August 1, 2011, Plaintiff Annette K. ("Parent"), individually and on behalf of her minor child C.K., filed a Request for an Impartial Hearing, challenging C.K.'s May 18, 2011 Individualized Education Plan. (Admin. R. on Appeal, Ex. 1, ECF No. 17.)

On November 30, 2011, the Administrative Hearing was held. (Admin. Hr'g Tr., Nov. 30, 2013, ECF No. 14.)

On February 17, 2012, the Administrative Hearings Officer issued a Decision. (Admin. R., Ex. 9, ECF No. 17.)

On March 16, 2012, Plaintiffs filed a Complaint in the Hawaii Federal District Court, appealing the Administrative Hearings Officer's Decision. (ECF No. 1.)

On July 26, 2012, the Court received the Administrative Record on Appeal. (ECF Nos. 13-17.)

On October 9, 2012, Plaintiffs filed an Opening Brief. (ECF No. 26.)

On November 9, 2012, Defendants Hawaii Department of Education and Kathyn Matayoshi, Superintendent of Hawaii Public Schools, filed an Answering Brief. (ECF No. 29.)

On January 4, 2013, the Court held a hearing and took the matter under submission.

## INDIVIDUALS WITH DISABILITIES EDUCATION ACT

Congress enacted the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., to financially assist state and local agencies in educating students with disabilities. See Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1469 (9th Cir. 1993). The IDEA's goal is to ensure that children with disabilities are provided with a Free Appropriate Public Education ("FAPE") that is designed to meet their unique needs and prepare them for the future. 20 U.S.C. § 1400(d)(1)(A).

As a recipient of federal funds, the State of Hawaii, Department of Education must "establish and maintain procedures in accordance with [the IDEA] to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]." 20 U.S.C. § 1415(a).

The mechanism for ensuring a FAPE is through the development of a detailed, individualized instruction plan known as an

3

Individualized Education Program ("IEP") for each child. 20
U.S.C. §§ 1401(9), 1401(14), and 1414(d). The IEP is a written
statement, prepared at a meeting of qualified representatives of
the local educational agency, the child's teacher, parent(s), and
where appropriate, the child. The IEP contains, in part, a
statement of the present levels of the child's educational
performance, a statement of the child's annual goals and short
term objectives, and a statement of specific educational services
to be provided for the child. 20 U.S.C. § 1401(19). The IEP is
reviewed, and if appropriate, revised, at least once each year.
20 U.S.C. § 1414(d).

A parent may challenge an IEP by filing a request for a due
process hearing. 20 U.S.C. §§ 1415(b)(6), 1415(f). A challenge to
an IEP may allege a procedural or substantive violation of the
IDEA. J.W. ex rel. J.E.W. v. Fresno Unif. Sch. Dist., 626 F.3d
431, 432-33 (9th Cir. 2010). A procedural violation occurs when a
State violates the IDEA's statutory or regulatory procedures in
creating or implementing an IEP. A substantive violation occurs
when a State offers an IEP that is not reasonably calculated to
enable the child to receive a meaningful educational benefit. Id.

**BACKGROUND**

**C.K.'s Education at Public School**

4

C.K is a fourteen-year-old child with severe dyslexia. (Admin. R., Ex. 9, Decision of Administrative Hearings Officer ("Admin. Decision") at ¶ 1.)

From Kindergarten through Sixth Grade, C.K. attended public school at Maili Elementary School ("Public School"). C.K. has been eligible for special education and related services under the IDEA from the time he repeated first grade, during the 2005-2006 school year. (Id. at ¶¶ 2, 5.)

C.K. has difficulty decoding words, as well as difficulty reading and writing. (Id. at ¶ 32.) To help address these deficits, the Public School provided C.K. with a computer-based support program, the Kurzweil system, that reads for C.K. by highlighting text on a computer screen while speaking the words. (Id. at ¶ 11.)

Despite repeated instruction, C.K.'s progress in decoding and phonemic awareness[1] at Public School was limited. (Id. at ¶ 35.) He has trouble recalling what he learns after only a short period of time. (Id. at ¶ 39.)

On May 18, 2011 an IEP Team, including C.K.'s Parent and C.K.'s Sixth-Grade Teacher, met to develop C.K.'s Individualized Education Program ("IEP"). The IEP Team discussed whether C.K. would continue to qualify for Extended School Year ("ESY")

---

[1]    "Phonemic awareness" is the knowledge that words are made up of various sounds (e.g. that "cat" consists of the sounds "kuh-ah-tuh"). (Admin. Decision at n.6.)

services, which C.K. had been receiving after school breaks of more than seven days. (Id. at pg. 14.) ESY services are special education and related services provided beyond the normal school year to prevent regression. (Id. at pg. 13 n.23.) ESY services are only provided if the IEP Team determines that such services are necessary to provide a FAPE. 34 C.F.R. § 300.309(a); Haw. Admin. R. § 8-60-7.

At the meeting, C.K.'s Parent told the IEP Team that she was having difficulty getting C.K. to attend ESY services. She stated that if the Public School was going to offer C.K. ESY services similar to the ones he previously received, she did not want C.K. to attend ESY. She stated that the ESY services previously provided to C.K. did not focus on his particular learning difficulties and grouped him with students with behavioral problems, who did not share C.K.'s learning objectives. (Admin. Hr'g Tr. 55-56, 68-70, ECF No. 14.) The May 18, 2011 IEP team determined that C.K. was not entitled to ESY services. (Admin. Decision at ¶¶ 39-40.)

The May 18, 2011 IEP included the following services for C.K.:

   (1)   1200 minutes per week of special education in the
         general education and special education setting;

   (2)   Supplemental aids and services, including among others,
         Assistive technology and Text presented aurally;  the

6

Kurzweil system and "My Reading Coach"; and

(3)   a reading goal and objectives to address each of C.K.'s
      reading needs, including the need to learn decoding
      skills, answer "wh" questions, and state the author's
      purpose.

(Id. at ¶ 32.) On August 1, 2011, C.K.'s Parent challenged the May 18, 2011 IEP.

In August 2011, C.K.'s Parent placed C.K. in a private school, Academy of the Pacific ("Private School"), and hired a Private Reading Tutor. (Id. at ¶ 45.)

**Plaintiff's Administrative Challenge to the May 18, 2011 IEP**

In Plaintiff's August 1, 2011 request for an Administrative Hearing, Plaintiff claimed the May 18, 2011 IEP denied C.K. a Free Appropriate Public Education because (1) it did not provide ESY services, which substantively and procedurally violated the IDEA and (2) it established reading objectives that were minimal and insufficient. Plaintiff requested reimbursement for tuition paid to Private School and supportive tutors, as well as compensatory education. (Admin. R., Ex. 1, Req. for Impartial Hr'g at pg. 4, ECF 17.)

An Administrative Hearing was held on November 30, 2011. The Administrative Hearings Officer ("Hearings Officer") issued a Decision (Case No. DOE-SY1112-007) on February 17, 2012, in favor of the Department of Education. The Hearings Officer determined

that C.K. was inappropriately denied ESY services, because C.K.'s regression and need for recoupment prior to the ESY period was not a valid reason to deny him services. The Decision stated, however, that the "inappropriate denial of ESY services [was] a procedural violation," which did not fatally flaw the May 18, 2011 IEP. The Hearings Officer also found that the reading objectives in the May 18, 2011 IEP were sufficient. (Admin. Decision at pgs. 14-17.) Having found that C.K. was offered a FAPE in the May 18, 2011 IEP, the Decision did not address Plaintiff's request for reimbursement.

Plaintiff seeks the reversal of the Hearings Officer's February 17, 2012 Decision. Plaintiff asserts that the inappropriate denial of ESY services in the May 18, 2011 denied C.K. a FAPE. Plaintiff seeks reimbursement, compensatory education, and attorneys' fees.

## STANDARD OF REVIEW

In evaluating an appeal of an administrative decision under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., a district court receives the records of the administrative proceedings and may hear additional evidence at the request of a party. The standard of proof is by a preponderance of the evidence. A court shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2)(C).

**A.    Burden of Proof**

Under the IDEA, the burden of proof in an appeal from an administrative decision regarding a challenge to an Individualized Education Program ("IEP") is placed upon the party seeking relief, whether that is the child or the school district. Hood v. Encinitas Union Sch. Dist., 486 F.3d 1099, 1103 (9th Cir. 2007). The same is true for the administrative hearing. Schaffer ex rel. Schaffer v. Weast, 1546 U.S. 49, 62 (2005).

As the party challenging the Administrative Decision, Plaintiff bears the burden of demonstrating, by a preponderance of the evidence, that the Decision of the Hearings Officer should be reversed. Hood, 486 F.3d at 1103; J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 626 F.3d 431, 438 (9th Cir. 2010).

**B.    Deference**

Courts reviewing an administrative hearing must give "due weight" to the administrative decision, and must not "substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).

The Court has discretion to decide the amount of deference it gives to the administrative findings. County of San Diego v. California Spec. Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996). When determining the level of deference to accord the hearings officer's findings, the court may give greater

deference when the hearings officer's findings are "thorough and careful." Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995), *aff'd after remand on other issues*, 462 Fed.Appx. 745 (2011).

Although the court must carefully consider the hearings officer's findings and address the hearings officer's resolution of each material issue, the ultimate determination of an IEP's appropriateness is reviewed *de novo*. Id.

## C.  Violations of the Individuals with Disabilities Education Act

States must comply procedurally and substantively with the IDEA to ensure that a child receives a FAPE. N.B. v. Hellgate Elem. Sch. Dist., 541 F.3d 1202, 1207 (9th Cir. 2008). To determine whether a child has received a FAPE, the Court's inquiry is twofold: (1) has the State complied with the IDEA's procedures and (2) is the IEP developed through the IDEA's procedures reasonably calculated to enable the child to receive educational benefits? See Rowley, 458 U.S. at 206-07; Anchorage Sch. Dist. v. M.P., 689 F.3d 1047, 1054-55 (9th Cir. 2012). If procedural inadequacies result in the loss of educational opportunity, seriously infringe a parent's opportunity to participate in the IEP formulation process, or caused a deprivation of educational benefits, a court need not reach the issue of substantive compliance. Id.

## ANALYSIS

Plaintiff Annette K., on behalf of her child C.K., appeals the Decision of the Administrative Hearings Officer ("Hearings Officer"), finding that the May 18, 2011 Individualized Education Program ("IEP") provided C.K. with a Free Appropriate Public Education ("FAPE"). Plaintiff claims that the Hearings Officer's finding, that the State inappropriately denied C.K. Extended School Year ("ESY") services, requires finding that C.K. was denied a FAPE. The appeal does not address the Hearings Officer's finding that the reading goals and objective in the IEP were sufficient.

## I.  INTERPRETING THE DECISION OF THE ADMINISTRATIVE HEARINGS OFFICER

The Administrative Decision recounts the testimony of C.K.'s Sixth-Grade Teacher, stating that the IEP Team decided that C.K. did not require ESY services because: (1) he regresses during the school week and needs to recoup learned skills prior to an ESY period and (2) he is independently able to access his education via the Kurzweil system. (Admin. Decision at pg. 14.)

The Decision then states:

> [R]egression and need for recoupment prior to the ESY period [was] not a valid reason to deny him ESY services. Difficulty with regression and recoupment in the area of reading is a constant problem for [C.K.] and one of his unique needs. Based on a preponderance of the credible evidence, the Hearings Officer finds that [C.K.] should have been qualified to receive ESY

11

services at the May 18, 2011 IEP meeting.

The inappropriate denial of ESY services is a
procedural violation.

(Id.)

The Hearings Officer then determined that the denial of ESY
services was a procedural flaw, but did not constitute a denial
of a FAPE. Procedural inadequacies only constitute the denial of
a FAPE when they impede the child's right to a FAPE,
significantly impede parents' opportunity to participate in the
decision-making process, or caused a deprivation of educational
benefits. 20 U.S.C. § 1415(f)(3)(E)(ii); Haw. Admin. R. § 8-60-
67(a)(2); Amanda J. ex rel Annette J. v. Clark Cnty. Sch. Dist.,
267 F.3d 877, 892 (9th Cir. 2001).

Plaintiff contends that the Hearings Officer ruled that C.K.
was entitled to ESY services. ESY services are only provided when
the IEP Team determines that ESY services "are necessary for the
provision of a FAPE to the student," pursuant to Hawaii
Administrative Rule § 8-60-7. Plaintiff claims that by finding
C.K. entitled to ESY services, the Hearings Officer necessarily
found that ESY services were required for C.K. to receive a FAPE.
If ESY services were necessary for C.K. to receive a FAPE, an IEP
lacking those services would necessarily deny C.K. a FAPE.

It is unclear how the Hearings Officer could see the
inappropriate denial of ESY services as a procedural error. There

is no explanation in the Decision that makes clear the basis upon which it could constitute a procedural error, but not a substantive error.

## II.   THE MAY 18, 2011 INDIVUALIZED EDUCATION PROGRAM DENIED C.K. A FREE APPROPRIATE PUBLIC EDUCATION

An Individualized Education Program ("IEP") adequately provides a FAPE if it is reasonably calculated to provide a child with a meaningful educational benefit at the time it was developed. J.W., 626 F.3d at 449. It must be tailored to the unique needs of the child and reasonably designed to produce benefits that are "significantly more than de minimus, and gauged in relation to the potential of the child at issue." Blake C. ex rel Tina F. v. Hawaii Dep't of Educ., 593 F.Supp.2d 1199, 1206 (D. Haw. 2009). A state need not provide a child with a "potential maximizing education." Rowley, 458 U.S. at 181.

An IEP must include ESY services when an IEP Team determines that such services are necessary to provide a FAPE. 34 C.F.R. § 300.309(a); Haw. Admin. R. § 8-60-7. ESY services are necessary to a FAPE "when the benefits a disabled child gains during a regular school year will be significantly jeopardized if he is not provided an educational program during the summer months." N.B. v. Hellgate, 541 F.3d at 1211 (quoting MM ex rel. DM v. Sch. Dist. of Greenville Cnty, 303 F.3d 523, 537-38 (4th Cir. 2002)).

At the IEP Meeting on May 18, 2011, the IEP Team determined that ESY services were not necessary to provide C.K. with a FAPE after considering five factors: (a) the nature of the student's disabling condition; (b) the severity of the student's disabling condition; (c) the areas of learning crucial to attaining the goal of self-sufficiency and independence from caregivers; (d) the extent of regression caused by the interruption of educational programming; and (e) the rate of recoupment following the interruption of educational programming. (Admin. Decision at n.20.) C.K.'s Sixth-Grade Teacher testified at the Administrative Hearing about the IEP Team's discussion of the factors:

> When we looked on the regression and recoupment for the criterias, we had found that even prior to the start of ESY, he was already – couldn't remember what he had learned prior to the start of ESY.
>
> [The discussion with respect to the nature and severity of C.K.'s disabling condition] was very brief . . . [W]e knew that he was able to do on his own, like with the [Kurzweil program], and so he was independent of that . . . [W]e knew he was able to do on his own.

(Admin. Hr'g Tr. 172.)

The Hearings Officer's Decision recounts the testimony of C.K.'s Sixth Grade Teacher:

> [C.K.'s Sixth Grade Teacher] confirmed that [C.K.] was a self-motivated learner who was able to independently access the 6th grade regular education curriculum via the Kurzweil system and engage in higher level thinking skills.

(Admin. Decision at pg. 17.)

14

The testimony of the Sixth Grade Teacher appears to provide the basis for the Hearings Officer's ruling that the denial of ESY services was merely a procedural error, and not a substantive error. The Administrative Decision does not contain a full explanation of the basis for the determination. The Court is not required to give a high level of deference to the Hearings Officer's ruling on whether ESY services were required, because the Administrative Decision does not thoroughly address the issue. See Capistrano, 59 F.3d at 891.

The Hearings Officer's determination that the May 18, 2011 IEP provided C.K. with a FAPE is contrary to the evidence presented at the Administrative Hearing. The evidence demonstrates that, at the time the May 18, 2011 IEP was drafted, C.K. required ESY services to receive a FAPE.

Testimony at the Administrative Hearing shows that C.K. rapidly regressed when was not provided with educational programming. For example, the Principal of the Public School testified that C.K. was able to make improvements in his reading skills in a supportive setting, but "hours, days, weeks later . . . it's like you're starting fresh." (Admin. Hr'g Tr. 83-84.) The Private Reading Tutor similarly testified that when she sees C.K. less frequently than three to five times a week, "there's a lot of make up time . . . You just really have to backtrack." (Id. at 27.) C.K.'s rapid regression strongly supports his need

15

for continuous educational services. See N.B., 541 F.3d at 1211-
12 (ESY services are necessary when benefits a child gains during
a regular school year will be jeopardized by the break in
educational programming).

     While the Kurzweil system ideally would have allowed C.K. to
work independently, the Kuzweil system, as implemented, had
numerous problems that prevented C.K. from accessing his
education. The technological problems with the Kurzweil program
are reported in the September 7, 2011 IEP. (Admin. R., Pet'rs'
Exs., Ex. 1 at pg. 4, ECF No. 15.) The May 18, 2011 IEP did not
mention the problems with the Kurzweil system, but C.K.'s
Parent's testimony at the Administrative Hearing indicates that
the Public School was aware of the technological problems at the
time the May 18, 2011 IEP was developed. (Admin. Hr'g Tr. 51,
66.)

     The inclusion of ESY services in all of C.K.'s previous IEPs
(Admin. Hr'g Tr. 9-10), also supports C.K.'s need for ESY
services because such services are only provided when they are
necessary for a FAPE. See Haw. Admin. R. § 8-60-7. The September
7, 2011 IEP, developed subsequently to the IEP challenged here,
also recognized that ESY services were "necessary" for C.K. to
receive a FAPE. The denial of ESY services in the May 18, 2011
was improper because it failed to account for C.K.'s need for
continuous educational services. See Adams v. State of Oregon,

195 F.3d 1141, 1150 (9th Cir. 1999)(reduction in ESY services is improper when it is not linked to the child's unique needs).

C.K.'s Parent testified at the Administrative Hearing that the ESY services provided to C.K. in previous years did not focus on his particular learning difficulties. She stated that C.K. was placed with students with behavioral problems who did not share the objectives stated in C.K.'s IEPs. She stated that she did not want C.K. to receive ESY services provided in the same way as previous years. (Admin. Hr'g Tr. 55-56, 68-70.) She had experienced difficulty in motivating him to attend because of the nature of the ESY program.

Because parental participation in developing an IEP is "the cornerstone of the IDEA," a parent's rejection of ESY services during an IEP meeting may support the conclusion that such services were properly excluded from an IEP. See J.W., 626 F.3d at 447-48. At the meeting to develop C.K.'s IEP on May 18, 2011, C.K.'s Parent did not appear to be rejecting ESY services. C.K.'s Parent's objection was to the unsatisfactory implementation of ESY services provided to C.K. in previous years. There is ample support for the conclusion that ESY services were still required, and needed to be administered in a different way.

The need for better treatment of C.K.'s educational deficits is reflected in his success with the Private Reading Tutor and Private School. C.K.'s progress in reading skills and his

willingness to engage in the learning process at the Private School (Admin. Hr'g Tr. 27), as opposed to his lack of progress and noncompliance with the Public School's educational programming, supports the conclusion that the May 18, 2011 IEP failed to provide a meaningful educational benefit. The May 18, 2011 IEP provided more of the same services that had not previously resulted in success for C.K. See Blake C. ex rel Tina F. v. Hawaii Dep't of Educ., 593 F.Supp.2d 1199, 1212 (D. Haw. 2009)(child's progress after leaving public school relevant to whether IEP was reasonably calculated to produce meaningful educational benefit); Aaron P. V. Hawaii Dep't of Educ., Nos. 11-00635, 11-00711, 2012 WL 4321715, at *16 (Sept. 17, 2012)(progress after implementing an IEP is relevant to determining if an IEP was adequate).

The Court finds that May 18, 2011 was not reasonably calculated to provide C.K. with a FAPE, because it denied him ESY services. J.W., 626 F.3d at 449.

The Hearings Officer's February 17, 2012 Decision is **REVERSED.**

## III. PLAINTIFF'S REQUESTS FOR REMEDIES

### A.   Attorneys' Fees

Plaintiff requests attorneys' fees and costs for the Appeal and the Administrative Hearing. (Opening Brief at pg. 22.)

18

Attorneys' fees may be awarded to a prevailing parent under the IDEA at the Court's discretion. 20 U.S.C. § 1415(i)(3)(B)(i). A prevailing party is one that "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." <u>Van Duyn ex rel. Van Duyn v. Baker Sch. Dist.</u>, 502 F.3d 811, 825 (9th Cir. 2007).

Plaintiff did not prevail at the Administrative Hearing. The only administrative ruling in the Plaintiff's favor was the determination that denial of ESY services was a procedural error. The ruling does not qualify as a "success on a significant issue" because it did not grant any benefit to the Plaintiff. <u>See</u> <u>id.</u> (awarding reasonable attorneys' fees where the administrative ruling awarded the student an extra five hours of math instruction each week, even though the parent only prevailed on one of eleven contested issues). Plaintiff is not entitled to reasonable attorneys' fees and costs for the Administrative Hearing because she did not prevail at the administrative level.

As the prevailing party on the Appeal, Plaintiff may file a post-judgement motion for attorneys' fees and costs related to the Appeal of the Hearings Officer's February 17, 2012 Decision, pursuant to Local Rule 54.3.

**B.    The Hearings Officer Shall Determine Plaintiff's Entitlement to Reimbursement or Other Relief**

19

Plaintiff requests that the case be remanded to the Hearings Officer to determine Plaintiff's entitlement to remedies, including whether the Private School and tutoring services are appropriate for reimbursement. Plaintiff requests that Defendants not be allowed to enter new evidence with respect to whether the Private School is appropriate for reimbursement. (Opening Br. at pgs. 21-22, ECF No. 20.)

Reimbursement for private school expenditures is available if a court or hearings officer finds that the State denied the child a FAPE prior to the private school enrollment and the private placement is appropriate. 34 C.F.R § 300.148(c).

Having found that C.K. was denied a FAPE prior to his enrollment in Private School and tutoring services, the case is **REMANDED** for the Hearings Officer to determine and award the appropriate relief. The Hearings Officer may decide what evidence to allow in awarding the appropriate relief.

<u>CONCLUSION</u>

The May 18, 2011 Individualized Education Program denied C.K. a Free Appropriate Public Education.

The February 17, 2012 Decision of the Administrative Hearings Officer, finding that the May 18, 2011 offered C.K. a FAPE, is **REVERSED**.

Plaintiff is the prevailing party on the Appeal and is entitled to reasonable attorneys' fees and costs related to the

20

Appeal. Plaintiff may file a motion for attorneys' fees and costs, pursuant to Local Rule 54.3.

The case is **REMANDED** to the Administrative Hearings Officer for a decision on remedies.

IT IS SO ORDERED.

DATED:   March 22, 2013, Honolulu, Hawaii.



/S/ Helen Gillmor

Helen Gillmor
United States District Judge

---

Annette K., ex rel. C.K. v. State of Hawaii, Department of Education and Kathryn Matayoshi; Civ. No. 12-00154-HG-BMK; ORDER REVERSING AND REMANDING DECISION OF ADMINISTRATIVE HEARINGS OFFICER